# Germantown Trust Company et al., Appellants, v. Powell.

*Equity—Equity practice—Injunction — Auditor general — Statutes—Corporations, etc., with money on deposit for long time—Escheat—Requirement to file reports—Bill to enjoin—Premature issues—Act of June 7, 1915, P. L. 878—Supreme Court practice.*

1. The fact that the constant furnishing of detailed reports to the Federal and several state governments has become a very considerable financial and clerical burden to corporations, is alone a sufficient consideration to give these concerns and others so affected the right to question at once the validity of all acts of assembly placing such obligations upon them. While, in the exercise of its right of visitation, the state has power to compel corporations to render it reports, it cannot do this for the avowed purpose of enabling one of its officials to do something which the Constitution forbids, or even to accomplish a proper end in a manner prohibited by the organic law.

2. The Act of June 7, 1915, P. L. 878, requires reports to be made to the auditor general from persons and corporations having money on deposit or property in their possession for a long period of time belonging to other persons, and also requires reports from every corporation of dividends or profits declared but not paid. Certain corporations, from whom reports were demanded by the auditor general, filed bills in equity praying that the act be declared invalid as violating several mandates of both the Federal and State Constitutions. Upon demurrer the bills were dismissed on the ground that the issues were raised prematurely, and that the court would not enjoin preliminary steps taken for the purpose of discovering the whereabouts of property so circumstanced as reasonably to raise the presumption that it was liable to escheat. Upon appeal, held that the bills were improperly dismissed and the decrees were reversed and the bills reinstated that the issues raised might be determined by the court below.

3. The Supreme Court will not pass upon the effect of an amendatory statute not considered in the court below and which was enacted after the action was instituted under the prior statute.

Argued Sept. 24, 1917. Appeals, Nos. 1, 2 and 3, May T., 1918, by Germantown Trust Company, Columbia National Bank, and Union Trust Company of Pittsburgh,

from decrees of C. P. Dauphin Co., Equity Docket, Nos. 578, 575 and 576, Commonwealth Docket, 1916, Nos. 39, 37, and 38, dismissing bills in equity for an injunction, in cases of Germantown Trust Company v. A. W. Powell, Auditor General of Pennsylvania; Columbia National Bank, a Federal corporation, v. Same Defendant; Union Trust Company of Pittsburgh, a State corporation, v. Same Defendant.    Before BROWN, C. J., MESTREZAT, POTTER, STEWART, MOSCHZISKER, FRAZER and WALLING, JJ.    Reversed.

Bills in equity for an injunction.    Before KUNKEL, P. J.

The opinion of the Supreme Court states the facts.

The defendant demurred to the bills.    The court sustained the demurrers and dismissed the bills.    Plaintiffs appealed.

*Errors assigned* were the decrees of the court.

*R. Stuart Smith* and *Frank P. Prichard,* with them, *Morgan, Lewis & Bockius,* and *Prichard, Saul, Bayard & Evans,* for Germantown Trust Company, appellant.

*John M. Freeman,* of *Watson & Freeman,* with him *H. F. Stambaugh,* for Columbia National Bank, and Union Trust Company of Pittsburgh, appellants.

*Wm. M. Hargest,* Deputy Attorney General, with him *Francis Shunk Brown,* Attorney General, for appellee.

OPINION BY MR. JUSTICE MOSCHZISKER, January 7, 1918:

There are three appeals in this matter, but all can be disposed of together.    Appeal No. 1 is by the Germantown Trust Company, of Philadelphia; No. 2, the Columbia National Bank, of Pittsburgh; and No. 3, the

Union Trust Company of Pittsburgh. A bill in equity was filed by each of these corporations, praying that the Escheat Act of June 7, 1915, P. L. 878, be declared invalid as violating several mandates of both the Federal and State Constitutions.

The attorney general, who appears for the defendant auditor general, correctly states in each of his paper books: "The Act of June 7, 1915, P. L. 878, provides a comprehensive method for requiring reports to be made to the auditor general from persons and corporations having money on deposit or property in their possession for a long period of time belonging to other persons, and also requires reports from every corporation of dividends or profits declared but not paid, and provides under what circumstances such money and property may be escheated and the proceedings therefor. When the auditor general demanded the reports required under the said act of assembly, the plaintiff filed its bill in equity." Demurrers were sustained and the three bills dismissed; whereupon these appeals were taken.

The court below expressly declined to pass upon some of the most material issues suggested by the several bills, particul..rly those raised by the allegation that the statute attacked impairs the obligation of contracts existing between the respective complainants and their depositors, saying these issues were premature, that they might "be raised when the Commonwealth in any particular case attempts to exercise its power to escheat," but not sooner, and that the court would not "enjoin preliminary steps taken for the purpose of discovering the whereabouts of property so circumstanced as reasonably to raise the presumption that it is liable to escheat"; thus, in effect, ruling that complainants were obliged to render reports to the auditor general, under and by virtue of the Act of 1915, supra, even though the legislation in controversy subsequently might be declared invalid. With this conclusion we cannot agree.

In recent years, the constant furnishing of detailed re-

ports to the Federal and several state governments has become a very considerable financial and clerical burden to corporations, and this consideration alone is sufficient to give these concerns and others so affected the right to question at once the validity of all acts of assembly placing such obligations upon them. Of course, in the exercise of its right of visitation, for purposes of taxation and regulation, or to facilitate the accomplishment of any other proper end, the State has power to compel corporations to render it reports; but it cannot do this for the avowed purpose of enabling one of its officials to do something which the Constitution forbids or, even to accomplish a proper end, in a manner prohibited by the organic law.

If the Act of 1915, supra, is defective for any reason which, so far as the present appellants are concerned, would make it entirely invalid (for instance, if, as alleged, its application, ex necessitate, will violate contractual rights and obligations existing between complainants and their depositors), then the auditor general has no authority to compel the rendering of reports for the sole purpose of enabling him to institute unlawful proceedings thereunder; hence, complainants may at once question the validity of the act in this or any other particular materially affecting them. Again, though assuming for the moment that the operation of the act will not impair the obligation of contracts and that it is not invalid, as to appellants, for any other reason sufficiently comprehensive to avoid the whole statute, in other words, that the end which the act proposes to accomplish is lawful and, on the road thereto, the substance of the legislation breaches no fundamental inhibition, the question yet remains: Is there anything in the form or manner of the statute which materially offends against either the State or Federal Constitutions? For example, as drawn, is the act special legislation of a prohibited kind; and, if so, is this defect so broad as to avoid the whole statute? If it is, then the auditor gen-

eral is without authority to compel reports thereunder, and the complainants are in a position entitling them so to insist. Moreover, if any such fatal weaknesses exist, complainants are not obliged to await an attempt on the part of the Commonwealth to carry out the ultimate purposes of the act before attacking it; on the contrary, when the first steps are taken, and future proceedings thus threatened, they may go into equity to restrain enforcement of the statute, and in this way test the validity of the legislation: Penna. R. R. Co. v. Ewing, 241 Pa. 581, and cases there cited. Finally, if corporations such as those at bar, under protest, furnish required reports, so as to avoid the heavy penalties prescribed by the act for a failure to follow that course, they still may insist, as the present complainants do, that the details set forth in these documents are of "a private and confidential character," between them and their customers, and that the auditor general be restrained from breaking the seals of the envelopes in which they are placed or "opening, disclosing or in any wise making public the contents of said reports." For a ruling on the abstract question of the right to restrain a State official when the circumstances of any given case call for relief of that character, see West's App., 64 Pa. 186, 195.

It is not our intention to express or intimate any view as to the validity of the legislation here under attack, and nothing that we have said in this opinion is to be so understood. All we now decide is that the appellants are entitled to have the material points of their cases passed upon at the present time by the court below, before any aspect of the matter is brought before us for final determination.

The attorney general states in his paper books: "The legislature of 1917, by an act approved July 6, 1917, P. L. 725, amended the Act of June 7, 1915; so far as the Commonwealth is concerned, there is no objection to the [Supreme] court passing upon the Act of 1915 as amended by the Act of 1917, although the latter act was not be-

fore the court below"; but, of course, the present cases must be determined under the Act of 1915 alone, and the Act of 1917 cannot be considered.

The three decrees complained of are reversed, in order that the respective bills may be reinstated; and the several records are remitted to the court below, with directions to follow that course in each instance, and then to proceed to a determination of the issues involved which materially affect appellants, the order for costs to await final results.